IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JOSE ALFREDO SIFUENTES-<br>SANDOVAL, Reg. No. 23741-189,<br>    Movant, | §<br>§<br>§<br>§<br>§ | EP-11-CV-0188-DB<br>EP-06-CR-1421-DB |
| v. | §<br>§ | |
| UNITED STATES OF AMERICA,<br>    Respondent. | §<br>§ | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Movant Jose Alfredo Sifuentes-Sandoval's ("Sifuentes") motion under 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence [ECF No. 48].[1] Therein, Sifuentes challenges the 240-month sentence imposed by the Court after he pleaded guilty to conspiring to smuggle aliens resulting in death. After reviewing the record, the Court finds that Sifuentes's claims are time-barred.[2] Accordingly, the Court will deny Sifuentes's motion and summarily dismiss his civil cause pursuant to Rule 4(b) of the Rules Governing § 2255 Proceedings.[3] The Court will additionally deny Sifuentes a certificate of appealability.

### BACKGROUND AND PROCEDURAL HISTORY

On April 27, 2006, emergency medical service ("EMS") personnel and El Paso County

---

[1] "ECF No." in this context refers to the electronic case filing number for documents docketed in EP-06-CR-1421-DB.

[2] *See Kiser v. Johnson*, 163 F.3d 326, 328-29 (5th Cir. 1999) (noting that although the statute of limitations is an affirmative defense, it is appropriate for a district court to raise and consider the defense *sua sponte* when movant seeks habeas corpus relief).

[3] *See* 28 U.S.C.A.. § 2255 PROC. R. 4(b) (West 2011) (requiring a district court to dismiss a § 2255 motion when it plainly appears from the face of the motion, annexed exhibits, and prior proceedings in the case that the movant is not entitled to relief).

-1-

Sheriff's Department deputies responded to a call from Sifuentes's trailer house in Fabens, Texas. Sifuentes was waiting at the trailer with Sonia Irene Ramos ("Ramos") when they arrived. Sifuentes directed the EMS personnel to the back seat of his van where they found a young girl without a pulse or spontaneous respiration. Sifuentes told the deputies he found the girl on the road and she asked for help. Ramos confirmed Sifuentes's statement. The EMS personnel began cardiopulmonary resuscitation ("CPR") and transported the girl to a medical center in El Paso, Texas where doctors pronounced her dead. An autopsy revealed the girl died from a pulmonary thromboembolism with a large bilateral pulmonary infarct. Based on the autopsy report and statements made by Sifuentes and Ramos, the Sheriff's Department closed the investigation.

On May 2, 2006, Immigration and Customs Enforcement ("ICE") special agents began investigating the death of a fourteen-year-old juvenile alien from El Salvador. Ramos came forward and described the events surrounding the death of the young girl. She explained to the ICE special agents that Sifuentes told her what to say about the girl's death and admitted that they both lied to the deputies. Ramos claimed that Sifuentes approached her and asked if he could borrow her daughter's U.S. birth certificate for a young female who was ill and awaiting transport into the United States from Mexico. Ramos told Sifuentes she would consider lending him the birth certificate if she could see the girl. Ramos understood the girl was at Amalia Baquera's ("Baquera") home in Caseta, Chihuahua, Mexico. Later that evening, Ramos contacted Baquera and said she was considering lending Sifuentes the birth certificate. Baquera told her that Sifuentes had already smuggled the girl into the United States and had taken her to his home in Fabens, Texas. Crossing records from the port of entry confirmed Sifuentes's

vehicle crossed into the United States that evening. After learning this, Ramos contacted Sifuentes's mother, with whom he lived. The mother indicated the girl was at her home. When Ramos arrived at the residence, Sifuentes's mother told her that her son had smuggled the girl into the United States earlier that evening and that the girl had been vomiting blood. Sifuentes told Ramos that the girl had been ill for a few days and he did not want to transport her to a hospital because he owed money and was afraid the police would arrest him for smuggling.

Ramos claimed she spoke to the girl in Sifuentes's van for about twenty to thirty minutes. She noted that the girl's face was pale, her lips were purple, her eyes were yellow, and she was extremely dehydrated. She said the girl told her that she was incurable, tired of being sick, and was going to die soon. Ramos suggested that Sifuentes drive the girl to the hospital. At that point, however, the girl convulsed, rolled her eyes and fainted. It was only then that Sifuentes agreed to called for help. Sifuentes told Ramos what to say to the authorities as the EMS personnel were on their way to his home.

After receiving information about the girl's death from Ramos, the ICE special agents began investigating the smuggling operation. They contacted the girl's mother who explained that she agreed to pay $7000 to have her daughter smuggled into the United States. She further indicated that the same organization smuggled her other daughter into the United States in 2005. She said she sent $3,500 as a down payment to the smugglers, and agreed to pay the remainder once her daughter arrived in the United States. The mother said she received a phone call from an unidentified male telling her that her daughter had arrived in El Paso.

The mother's other daughter, Cindy Claros ("Claros"), told the ICE special agents that she left El Salvador in early October, 2005. She explained that she traveled for twenty days prior

to reaching Juarez, Chihuahua, Mexico, and stayed at Baquera's house in Caseta for one day. She explained that when she arrived in Caseta, she observed many other aliens at Baquera's house waiting to enter the United States. She further stated that she was only able to eat once a day and had very little to drink during her journey. She added that she was not able to eat anything while saying at Baquera's house. After the day at Baquera's house, Claros explained that she crossed through a port of entry in the El Paso area along with a very young child. She claimed that she crossed with a Hispanic male matching the description of Sifuentes.

The investigation further revealed an extensive, long-term smuggling operation and conspiracy. According to information provided by a confidential source, Baquera ran the smuggling operation. The source explained that aliens would arrive at Baquera's house in Caseta where she would house them for a few days. During this time, Baquera and Sifuentes would arrange to smuggle them into the United States. The source added that Sifuentes would organize the movement of the aliens, recruit guides to smuggle them into the United States, and arrange for their housing once they crossed the border.

As the investigation continued, the ICE special agents learned more about Sifuentes's activities. A cooperating defendant, stopped while transporting eleven undocumented aliens into the United States, claimed that Sifuentes had recruited him. According to this source, Sifuentes was personally transporting four more aliens at the same time. Another source indicated that he had moved fifteen aliens for Sifuentes and Baquera on two occasions. A third source claimed that he had been at Baquera's residence in Caseta and seen numerous aliens waiting there to cross the border. During an undercover investigation, one of the sources met with Sifuentes to discuss moving a load of aliens. At the meeting, Sifuentes asked the source to move two juveniles, a

four year old and an eighteen-month old baby into the United States.

The ICE special agents arrested Sifuentes on June 9, 2006, when he entered the United States from Mexico with two passengers, an adult female and a child. The child initially said Sifuentes was her father, but during further questioning admitted that she was a Mexican citizen and that she did not know Sifuentes. Sifuentes used birth certificates belonging to American children in his attempt to get these aliens into the country.

After hearing evidence against Sifuentes, a grand jury sitting in the Western District of Texas, El Paso Division, returned a seven-count indictment charging him with the following offenses: conspiracy to smuggle aliens for the purpose of financial gain and in which a death occurred, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(1) ("count one"); encouragement and inducement of aliens to enter, resulting in death, in violation of 8 U.S.C.§ 1324(a)(1)(A)(iv) and (B)(iv) ("count two"); harboring aliens, resulting in death, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii) and (B)(iv) ("count three"); alien smuggling for profit, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) ("counts four through six"); and aggravated identity theft, in violation of 18 U.S.C. § 1028A ("count seven").

Sifuentes elected to forego trial and pleaded guilty to count one of the indictment –conspiracy to smuggle aliens for profit with death resulting–pursuant to a written plea agreement which contained a waiver of his rights to appeal or collaterally attack his sentence. After admonishing Sifuentes of his rights, the Court accepted his plea and later sentenced him within the advisory guideline range to 240 months' imprisonment followed by five years' supervised release. Sifuentes appealed his sentence to the Court of Appeals for the Fifth Circuit.

In his appeal, Sifuentes argued that the waiver in the plea agreement was unenforceable

because the Government breached the accord by objecting to the presentence report and arguing for numerous enhancements to his sentence. The Fifth Circuit noted that Sifuentes did not argue the appeal waiver was unknowing or involuntary, and found that, under the plain language of the plea agreement, the waiver applied to the circumstances at hand.[4] Accordingly, on August 19, 2008, the Fifth Circuit concluded that Sifuentes's waiver barred further review and affirmed his sentence.

In his instant § 2255 motion, Sifuentes asserts his trial counsel provided ineffective assistance when he failed to properly brief him on the consequences of the plea agreement and coerced him into pleading guilty to count one of the indictment.

> In the plea negotiation process, Petitioner was told by counsel, that if[] he agreed to plead guilty, he would not receive any enhancements, and he would still be able to make objections and that he could appeal any issue upheld by the Court, despite the language in the Appeal Waiver. Petitioner was also told by counsel, that both the [Assistant United States Attorney] and Judge were mad at him over the death of the teen. Counsel told Petitioner that his certain sentence was life, if he took the case to trial. Moreover, that the Judge was biased in favor of the [G]overnment against defendants charged with alien smuggling. Consequently, Petitioner was deprived of the rights to effective assistance of counsel in connection with the negotiation of the appeal waiver in Petitioner's plea agreement, and, thus, the waiver was rendered unlawful and not knowingly or voluntarily entered into and enforcing the appeal waiver will result in a miscarriage of justice.[5]

### LEGAL STANDARD

*A.     Section 2255*

After a defendant has been convicted and exhausted or waived any right to appeal, a court

---

[4] *United States v. Sifuentes-Sandoval*, 290 F.App'x 695 at **1 (5th Cir. 2008) (citing *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005)).

[5] Pet. 11.

is normally "entitled to presume that the defendant stands fairly and finally convicted."[6] Accordingly, "'[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.'"[7] Thus, before a court may grant relief pursuant to § 2255, the movant must establish "(1) his sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack."[8]

*B.    Limitations*

Additionally, a § 2255 motion to vacate, set aside, or correct a sentence is subject to a one-year limitations period.[9] A federal prisoner must file his motion within one year from the date on which (1) the judgment became final; (2) the government-created impediment to filing the motion was removed; (3) the United States Supreme Court initially recognized, and made retroactively applicable to cases on collateral review, the legal predicate for the motion; or (4) the petitioner could have discovered, through due diligence, the factual predicate for the motion.[10]

---

[6] *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) (citing *United States v. Frady*, 456 U.S. 152, 164 (1982)).

[7] *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (quoting *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994)).

[8] *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted).

[9] 28 U.S.C.A. § 2255(f) (West 2011).

[10] *Id.*; *United States v. Brown*, 305 F.3d 304, 306-07 (5th Cir. 2002).

C. *Equitable tolling*

The one-year limitations period is not jurisdictional and is subject to equitable tolling.[11] Equitable tolling is not, however, available for "'garden variety claims of excusable neglect.'"[12] It is justified only "in rare and exceptional circumstances."[13] Such circumstances include situations in which a movant is actively misled by the respondent "'or is prevented in some extraordinary way from asserting his rights.'"[14] Additionally, "'[e]quity is not intended for those who sleep on their rights.'"[15] Rather, "'[e]quitable tolling is appropriate where, despite all due diligence, a plaintiff is unable to discover essential information bearing on the existence of his claim.'"[16] Moreover, a movant has the burden of proving that he is entitled to equitable tolling.[17] In order to satisfy his burden, he must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" of timely filing his § 2255

---

[11] *Cf. Holland v. Florida*, -- U.S. --, --, 130 S.Ct. 2549, 2560 (U.S. 2010) ("[W]e hold that § 2244(d) is subject to equitable tolling in appropriate cases."). *See also United States v. Flores*, 135 F.3d 1000, 1002 n.7 (5th Cir. 1998) ("Because of the similarity of the actions under sections 2254 and 2255, they have traditionally been read in pari materia where the context does not indicate that would be improper.").

[12] *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002) (quoting *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)).

[13] *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002) (quoting *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998)).

[14] *Id.* (quoting *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999)).

[15] *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999) (quoting *Covey v. Arkansas River Co.*, 865 F.2d 660, 662 (5th Cir. 1989)).

[16] *Id.* at 715 n.14 (quoting *Pacheco v. Rice*, 966 F.2d 904, 906-07 (5th Cir. 1992)).

[17] *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000).

motion.[18] Finally, "[t]he decision to invoke equitable tolling is left to the discretion of the district court" and reviewed only for an abuse of discretion.[19]

With these principles in mind, the Court turns to the merits of Sifuentes's claims.

## ANALYSIS

In most cases, § 2255's limitations period begins to run when the judgment of conviction becomes final.[20] A judgment becomes final when the applicable period for seeking direct review expires.[21] In this case, the Fifth Circuit affirmed Sifuentes's conviction on August 19, 2008. Sifuentes did not file a petition for writ of certiorari. Thus, Sifuentes's conviction became final on November 17, 2008, when the ninety-day period for filing a petition for writ of certiorari expired.[22] Accordingly, Sifuentes's time period for filing a § 2255 motion within one year after his conviction became final expired on November 17, 2009. Sifuentes constructively filed his instant motion on October 21, 2010, the day on which he signed and presumably mailed it.[23]

---

[18] *Lawrence v. Florida*, 549 U.S. 327, 336 (2007).

[19] *Cousin*, 310 F.3d at 848.

[20] *See Clay v. United States*, 537 U.S. 522, 524 (2003) ("A motion by a federal prisoner for postconviction relief under 28 U.S.C. § 2255 is subject to a one-year time limitation that generally runs from 'the date on which the judgment of conviction becomes final.'") (quoting 28 U.S.C. § 2255(f)(1)).

[21] *Id.* at 525; *United States v. Gamble*, 208 F.3d 536 (5th Cir. 2000) (per curiam).

[22] *See* SUP. CT. R. 13(1) ("[A] petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a . . . United States court of appeals . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment."); *see also Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987) ("By 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.").

[23] A *pro-se* prisoner's habeas-corpus petition is constructively filed when the prisoner signs and presumably delivers the papers to prison authorities for mailing to the district court. *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000) (citing *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir.1998)).

Thus, Sifuentes filed his motion eleven months and five days beyond the deadline. Sifuentes's motion is therefore untimely, and must be denied, unless another provision of § 2255 or equitable tolling applies.

Sifuentes has not alleged a Government-created impediment prevented him from filing his motion.[24] He has also not asserted a claim based on a right newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.[25] He has not suggested he recently discovered the factual predicate for his motion through the exercise of due diligence.[26] Thus, another § 2255 limitations provision does not apply.

Sifuentes waited two years, two months, and three days after the Fifth Circuit affirmed his sentence before he signed his § 2255 motion. A habeas petitioner is entitled to equitable tolling of the limitations period only if he shows that (1) he pursued his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing.[27] He has not shown that

---

Although the District Clerk did not receive the motion until May 9, 2011, Sifuentes claims he mailed the original motion in October.

[24] See 28 U.S.C.A. § 2255(f)(2) ("The limitation period shall run from . . . the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action.").

[25] See 28 U.S.C.A. § 2255(f)(3) ("The limitation period shall run from . . . the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.").

[26] See 28 U.S.C.A. § 2255(f)(4) ("The limitation period shall run from . . . the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.").

[27] *Holland*, -- U.S. at --, 130 S.Ct. at 2562.

he pursued his rights by writing "letters seeking crucial information and providing direction."[28]
Sifuentes has not offered any explanation for the delay. He has neither exhibited due diligence in pursuing his claims nor presented evidence that he was prevented in some extraordinary way from asserting his rights. Therefore, this case lacks the rare and exceptional circumstances justifying equitable tolling.

Accordingly, the Court finds Sifuentes's motion to vacate is time-barred, he is not entitled to equitable tolling, and the Court need not address the merits of his claims.

## CERTIFICATE OF APPEALABILITY

A petitioner may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability."[29] Further, appellate review of a habeas petition is limited to the issues on which a certificate of appealability is granted.[30] In other words, a certificate of appealability is granted or denied on an issue-by-issue basis, thereby limiting appellate review solely to those issues on which a certificate of appealability is granted.[31] Although Sifuentes has not yet filed a notice of appeal, this Court nonetheless must address

---

[28] *Id*, -- U.S. at --,130 S.Ct. 2553.

[29] 28 U.S.C.A. § 2253(c)(1)(B) (West 2011).

[30] *See Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) (holding that, with regard to the denial of relief in habeas corpus actions, the scope of appellate review is limited to the issues on which a certificate of appealability is granted).

[31] *See* 28 U.S.C.A. § 2253(c)(3) (setting forth the narrow scope of appellate review in habeas corpus matters); *see also Lackey*, 116 F.3d at 151 (holding that a certificate of appealability is granted on an issue-by-issue basis, thereby limiting appellate review to those issues); *but see United States v. Kimler*, 150 F.3d 429, 431 & 431 n.1 (5th Cir. 1998) (explaining that the Fifth Circuit may address an issue not certified by the district court if the movant makes (1) an explicit request, and (2) a substantial showing of the denial of a constitutional right).

whether he is entitled to a certificate of appealability.[32]

A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[33] To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[34] Here, reasonable jurists would not debate the Court's findings concerning the timeliness of Sifuentes's motion. Accordingly, the Court finds that Sifuentes is not entitled to a certificate of appealability.

## CONCLUSION AND ORDER

For the reasons stated, the Court concludes that it should deny Sifuentes's motion and dismiss his civil cause. The Court further concludes that Sifuentes is not entitled to a certificate of appealability. Accordingly, the Court enters the following orders:

1. Movant Jose Alfredo Sifuentes-Sandoval's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence [ECF No. 48] is **DENIED** as time-barred and his civil cause is **DISMISSED WITH PREJUDICE.**

---

[32] *See* 28 U.S.C.A. § 2255 PROC. R. 11(a) (West 2011) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").

[33] 28 U.S.C.A. § 2253(c)(2).

[34] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to certificate of appealability determination in context of section 2255 proceedings).

2. Movant Jose Alfredo Sifuentes-Sandoval is **DENIED** a **CERTIFICATE OF APPEALABILITY**.

3. All pending motions in this cause, if any, are **DENIED** as moot.

**SO ORDERED.**

**SIGNED** this 17th day of May, 2011.

DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE